## CONTINUATION PAGES

This application is submitted in support of search warrants for the business location of CEDAR EMERGENCY PHYSICIANS LLC DBA HAZLETON URGENT CARE CENTER (hereinafter "CEDAR EMERGENCY"), believed to be owned by PAUL TAYOUN (hereinafter "TAYOUN"), located at **101 South Church Street, Suite B, Hazleton, Pennsylvania 18201,** and for the residential location of TAYOUN, located at **10 Hyde Park Drive, Drums, Pennsylvania 18222.** These search warrant applications arise from an Internal Revenue Service – Criminal Investigation (IRS-CI) investigation into violations including Attempting to Evade or Defeat Tax, in violation of Title 26, United States Code, Section 7201; Willful Failure to Collect or Pay Over Tax, in violation of Title 26, United States Code, Section 7202; Willful Failure to File Return, Supply Information, or Pay Tax, in violation of Title 26, United States Code, Section 7203; and Attempts to Interfere with the Administration of Internal Revenue Laws in violation of Title 26, United States Code, Section 7212(a).

Except as otherwise noted, the information contained in this application is known personally to me from examination of records, discussions with individuals, and from observations by me and other Special Agents of IRS-CI. I am thoroughly familiar with the facts and circumstances of this investigation, and all the information contained in this application is known to be true and correct to the best of my knowledge. This application was prepared for the limited purpose of obtaining search warrants for the aforementioned locations and is not a summary of all available case information or facts.

1

## AFFIANT'S QUALIFICATIONS

1.    I am a Special Agent (SA) with IRS-CI and have served in this capacity since March 2023. Prior to this, I served as a financial investigator with the United State Attorney's Office in the District of Massachusetts for two years. In this capacity, I provided financial examination assistance in investigations. Before joining the United States Attorney's Office, I served as a contract auditor for the Department of Defense for seven years. As an auditor with the Department of Defense, I was responsible for auditing large financial contracts for manufacturing and servicing of military equipment. I earned my Bachelor of Science degree in Accounting from Keystone College in 2012, a Master of Business Administration degree from the University of Hartford in 2019, and a Master of Digital Forensics degree from Champlain College in 2023. I have maintained a certification as a Certified Fraud Examiner (CFE) since 2018. I am a graduate of the Federal Law Enforcement Training Center's Criminal Investigator Training Program, as well as the IRS Special Agent Basic Training Program. The IRS training consisted of six months of basic and advanced training. The training includes investigative techniques, direct and indirect methods of proof, federal criminal law, federal tax law, surveillance, search warrants, arrest warrants, asset forfeiture and use of force aspects. My responsibilities include the investigation of possible criminal violations of the Internal Revenue Laws (Title 26, United States Code), the Money Laundering Control Act (Title 18, United States Code), and related Title 18, United States

Code offenses. I am presently assigned to the Philadelphia Field Office and I serve locally in the Scranton, Pennsylvania office.

2.    I am being assisted in this investigation by IRS Special Agent Ava-Marie Burnside. SA Burnside is a special agent with IRS-CI and has served in this capacity since July 2017. Prior to this, she served as a Revenue Agent for the Small Business/Self-Employed Civil Division of the IRS beginning in September 2009. She completed revenue agent basic training which involved studying a variety of tax laws and tax returns, including individual, corporate, and flow-through tax returns.  While employed as a revenue agent, she examined books and records, while on site at various businesses as well as the residences of business owners.  She assisted in the preparation of individual and business income tax returns while employed by a Certified Public Accountant before becoming employed by the IRS. She is presently assigned to the Philadelphia Field Office and serves locally in the Scranton Office.  She earned a Bachelor of Science degree in Accounting from Florida International University in 2007 and a Master of Science degree in Taxation from Nova Southeastern University in 2011.  She is a graduate of the Federal Law Enforcement Training Center's Criminal Investigator Training Program, as well as the IRS Special Agent Basic Training Program.  Her IRS training consisted of six months of basic and advanced training, including investigative techniques, direct and indirect methods of proof, federal criminal law, federal tax law, surveillance, search warrants, arrest warrants, asset forfeiture and use of force aspects.  Her responsibilities include the investigation of possible criminal violations of the Internal Revenue

3

Laws (Title 26, United States Code), the Money Laundering Control Act (Title 18, United States Code), and related Title 18, United States Code offenses.

3.    Based on my training and experience, I am familiar with methods and practices used by individuals and organizations used to evade or defeat tax. Individuals and organizations engaged in these types of activities typically maintain documentation at their home and office, including, but not limited to, bank records, ATM receipts, names and contact information of co-conspirators, and documents pertaining to assets purchased with fraud proceeds.  These records are often maintained in paper form, as well as on computers, smart phones, and other mobile devices.  The computers often contain books and records and financial software, along with copies of other related financial records.

4.    I am conducting an investigation into the allegation that TAYOUN attempted to evade or defeat tax, in violation of Title 26 U.S.C. § 7201; willful failure to collect or pay over tax, in violation of Title 26 U.S.C. § 7202; failed to file federal income tax returns in violation of Title 26 U.S.C. § 7203; and attempts to interfere with the administration of Internal Revenue laws in violation of Title 26 § U.S.C. 7212(a).

5.    Based on my training and experience as well as SA Burnside's training and experience, and the facts as set forth in this application, there is probable cause to believe that violations of federal tax statutes have been committed by PAUL TAYOUN in violation of Title 26, United States Code, Section 7201, attempting to evade or defeat tax; Title 26, United States Code, Section 7202, failed to file federal income tax returns; Title 26, United States Code, Section 7203, willful

4

failure to file return, supply information, or pay tax; and Title 26, United States

Code, Section 7212(a) attempts to interfere with the administration of Internal

Revenue laws. There is also probable cause to search the premises described in

Attachments A-1 and A-2 for evidence of these crimes further described in

Attachment B.


## JURISDICTION

6.    This Court has jurisdiction to issue the requested warrant because it is "a court of

competent jurisdiction" as defined by 18 U.S.C. § 2711. Specifically, under 18

U.S.C. § 2711(3)(A)(i), the Court is "a district court of the United States that has

jurisdiction over the offense being investigated."


## RECORDS SOUGHT

7.    This application is submitted in support of applications for search warrants for:

    a) Records in the possession of CEDAR EMERGENCY PHYSICIANS LLC

       DBA HAZLETON URGENT CARE CENTER, whose business is located at

       101 South Church Street, Suite B, Hazleton, Pennsylvania 18201. The

       specific records sought are described in Attachment B.

    b) Records and other evidence in possession of PAUL TAYOUN, whose

       residence is located at 10 Hyde Park Drive, Drums, Pennsylvania 18222.

       The specific records sought are described in Attachment B.

## OVERVIEW OF INVESTIGATION

8.    On or about August 10, 2023, IRS-CI received a referral regarding allegations

that TAYOUN has a long history of attempting to evade or defeat tax and failing

to file federal income tax returns for himself as well as for his business, CEDAR

EMERGENCY, located in Hazleton, Pennsylvania, located within Luzerne County

and in the Middle Judicial District of Pennsylvania. IRS's involvement with

TAYOUN began with an attempt by the Collection Division within civil IRS to

conduct an inquiry for delinquent returns for 2018. It was later expanded to

include additional years as it was discovered TAYOUN had been delinquent for

his personal tax returns and his corporation tax returns since 2007. TAYOUN

was not compliant with the requests of the Collection Division and the Collection

Officer referred the inquiry to the Examination Division within the IRS. Similarly,

TAYOUN was not cooperative with the Examination Division. The Examination

Division then referred the inquiry to IRS-CI for the allegations of attempting to

evade or defeat tax, in violation of Title 26 U.S.C. § 7201 and failing to file federal

income tax returns in violation of Title 26 U.S.C. § 7203. TAYOUN currently owns

and operates his business, CEDAR EMERGENCY PHYSICIANS LLC DBA

HAZLETON URGENT CARE CENTER, located at 101 South Church Street,

Suite B, Hazleton, Pennsylvania 18201.

**OTHER POTENTIAL SCHEME PARTICIPANTS**

9.    Based on the limited contact we have to date with the subject and his accomplices, the extent of other employees' involvement in the alleged scheme is unknown.

**BACKGROUND REGARDING THE FILING OF
FEDERAL INCOME TAX RETURNS**

10.    The IRS governs and administers federal income taxation.  The federal income tax filing requirements apply even if an individual does not owe tax and is seeking a refund. Generally, an individual must file a return if their gross income is at least over the applicable standard deduction amount for the tax year or if they have over $400.00 in net earnings from self-employment.

11.    According to federal law, all individuals who earn income in the United States are required to file a federal income tax return with the IRS for the tax year in which the income was earned.  This applies to both United States citizens and non-citizens, as well as individuals not documented to work in the United States.

12.    An individual tax return, Form 1040 -- U.S. Individual Income Tax Return, is an official report that calculates a taxpayer's total tax liability, often using financial information such as total income, and determines if there is an over or under payment of taxes.  In the event of an overpayment, a taxpayer is entitled to a refund.

7

13.    Taxpayers who earn their income in the form of wages from an employer will typically receive a Form W-2 – Wage and Tax Statement for its employees at the beginning of the next calendar year and attach it to their tax return. When used lawfully, a taxpayer's Form W-2 summarizes the amount of income earned and the amount of withholding credits, the amount of tax withheld by the taxpayer's employer throughout the tax year, for the respective year, among other information. Just after the end of each tax year, employers are also required to file a copy of each employee's Form W-2 with the Social Security Administration. The Social Security Administration in turn reports the Form W-2 information to the IRS. As a result, the IRS can then compare the Form W-2 filed by the employer with the Form W-2 earnings reported by the taxpayer.

14.    A corporation in existence during any portion of a taxable year is required to make and file, or prepare and file a return.

15.    The return required of a corporation under this section shall be made on Form 1120, U.S. Corporation Income Tax Return.

16.    Taxpayers can file their income tax returns by mail, or electronically over the Internet. To file electronically, a taxpayer may utilize software, available at retail stores or online, or hire the services of a tax return preparer.

## FACTS ESTABLISHING PROBABLE CAUSE TO SEARCH
## THE INVESTIGATION

17.    According to the referral provided to IRS-CI, PAUL TAYOUN has a history of attempting to evade or defeat tax and failed to file federal income tax returns as

8

an individual and for his corporation, CEDAR EMERGENCY PHYSICIANS LLC DBA HAZLETON URGENT CARE CENTER.

18. TAYOUN is the President, Vice President, Secretary, Treasurer, Emergency Medical Director, and CEO of CEDAR EMERGENCY PHYSICIANS LLC DBA HAZLETON URGENT CARE CENTER, a medical outpatient facility specializing in urgent care in Hazleton, Pennsylvania since its inception in 2003. CEDAR EMERGENCY PHYSICIANS is a professional services domestic corporation registered in the Commonwealth of Pennsylvania.

19. There is a long history of no federal income tax returns being filed since 2007 for the individual and the corporation. There is also a history of non-compliance with the IRS since 2005, 2006, and 2007 where TAYOUN and CEDAR EMERGENCY reported large unpaid tax liabilities which were not collected based on the expiration of statutes.

20. TAYOUN has been non-responsive to contacts and correspondences issued by the IRS Civil Divisions. On the following dates, the IRS Civil Divisions have attempted to contact TAYOUN at his residence:

| Contacts with IRS Civil Division | |
| --- | --- |
| 7/18/2022 Collection | In-Person contact by IRS |
| 7/27/2022 Collection | Mail sent by IRS |
| 10/14/2022 Collection | Mail sent by IRS |
| 10/15/2022 Collection | TAYOUN received certified letter from IRS |
| 12/9/2022 Collection | Mail sent by IRS |
| 6/2/2023 Examination | Mail sent by IRS |
| 6/15/2023 Examination | Mail sent by IRS |

21. Recently, CEDAR EMERGENCY corporate payroll tax return filings of Form 940 - Employer's Annual Federal Unemployment (FUTA) Tax Return and Form 941 -- Employer's Quarterly Federal Tax Return have been filed and paid timely.

22. CEDAR EMERGENCY has a history of filing Forms W-2 -- Wage and Tax Statement for its employees. But PAUL TAYOUN has not been issued a Form W-2.

23. CEDAR EMERGENCY utilizes the payroll service provider, ADP, for payroll services. ADP is CEDAR EMERGENCY's Authorized Reporting Agent, authorized by TAYOUN. ADP prepares and files Forms 940 and Forms 941, processes payroll, and prepares Forms W-2 for CEDAR EMERGENCY employees, based on the information provided to ADP. Payroll funds are withdrawn by ADP from the Payroll Account in the name of CEDAR EMERGENCY.

24. Subpoenaed records from ADP do not reflect any wages being earned by TAYOUN. Therefore, the records provided to ADP were inaccurate as they do not reflect information about the wages for TAYOUN.

25. Bank account records obtained from third parties were provided by the IRS Civil Divisions to IRS-CI. Records received included three bank accounts at Fidelity Deposit and Discount Bank. Two bank accounts were in the name of CEDAR EMERGENCY and one bank account in the name of PAUL TAYOUN. TAYOUN has signature authority for the CEDAR EMERGENCY accounts.

26. Bank account records were subpoenaed from two separate financial institutions for accounts in the name of PAUL TAYOUN and CEDAR EMERGENCY.

Statements for the account in the name of PAUL TAYOUN were addressed to

"10 Hyde Park Dr, Drums, PA 18222-3062," the residence of TAYOUN.

Statements for the accounts in the name of CEDAR EMERGENCY were

addressed to "101 S Church Street Ste B, Hazleton, PA 18201-6279."

27.    The CEDAR EMERGENCY bank accounts consist of two operations accounts

and a payroll account. The corporate operations accounts receive income from

insurance companies, check payments from patients, and third-party electronic

payment processors.

28.    The following table summarizes the payments made to CEDAR EMERGENCY

from insurance companies and third-party electronic payment processors:

Payments from Insurance Providers and Third-Party Payment Processors

| Year | Insurance Amount | Third-Party Amount | Total |
|---|---|---|---|
| 2018 | $ 463,916.00 | $ 80,879.00 | $ 544,795.00 |
| 2019 | 455,318.00 | 100,597.00 | 555,915.00 |
| 2020 | 473,529.00 | 165,850.00 | 639,379.00 |
| 2021 | 521,218.00 | 190,156.00 | 711,374.00 |
| 2022 | 435,282.00 | 174,607.00 | 609,889.00 |
| 2023 | 410,745.00 | 168,230.00 | 578,975.00 |
| Total | $ 2,760,008.00 | $ 880,319.00 | $ 3,640,327.00 |

29.    Since at least 2018, transfers have been made from the CEDAR EMERGENCY

bank account to the bank account in the name of TAYOUN. According to IRS

records, TAYOUN did not personally receive any Forms W-2 or Forms 1099

during this time.

30.    The following table summarizes the total transfers from the CEDAR

EMERGENCY corporate bank account to the personal bank account in the name

of TAYOUN.

Transfers from CEDAR EMERGENCY
Account to TAYOUN Account

| Year | Amount Transferred |
|------|------|
| 2018 | $    373,565.00 |
| 2019 | 417,115.00 |
| 2020 | 326,950.00 |
| 2021 | 343,450.00 |
| 2022 | 346,770.00 |
| 2023 | 375,010.00 |
| Total | $    2,182,860.00 |

31.   As reflected in the chart above, over two million dollars was transferred from the CEDAR EMERGENCY corporate bank account to a personal bank account in the name of TAYOUN between 2018 and 2023.

32.   Mortgage payments were also made from the personal bank account in TAYOUN's name. Mortgage payments were made to Mortgage Service Center for a mortgage at the residence of TAYOUN located at 10 Hyde Park Drive, Drums, Pennsylvania 18222.

33.   The current mortgage being held by TAYOUN for his residence in Drums, Pennsylvania has been held since 2011. The payments to the mortgage provider ranged from approximately $5,355.72 to $16,621.21, per month, from 2018 through 2023.  The payments from 2018 through 2023 totaled approximately $486,007.94.

34.   Surveillance was conducted on multiple occasions at the residence located in Drums, Pennsylvania and the business located in Hazleton, Pennsylvania. A red Ford F-150 Raptor pick-up truck with a Pennsylvania license plate "ZLD5545" has been observed at the business location. The vehicle is registered to PAUL

TAYOUN with the address of 10 Hyde Park Drive, Drums, Pennsylvania, 18222. TAYOUN has been observed entering, driving, and exiting the vehicle.

35.    Mail delivered to 10 Hyde Park Drive, Drums, Pennsylvania 18222 from January 17, 2024, to February 6, 2024 confirm PAUL TAYOUN received correspondence at this address. Mail included correspondence Service Electric Telephone, American Medical Association, Fidelity Bank, Pennsylvania Medical Society, and PenTeleData. TAYOUN also received packages at this address during this time.

36.    On April 24, 2024, May 29, 2024, July 30, 20204, and August 13, 2024, undercover operations were conducted by IRS-CI at CEDAR EMERGENCY PHYSICIANS LLC DBA HAZLETON URGENT CARE CENTER located at 101 South Church Street, Suite B, Hazleton, Pennsylvania 18201.

## UNDERCOVER CONTACT

37.    On April 24, 2024, May 29, 2024, July 30, 20204, and August 13, 2024, a different IRS Special Agent acting in an undercover capacity entered CEDAR EMERGENCY PHYSICIANS LLC DBA HAZLETON URGENT CARE CENTER located at 101 South Church Street, Suite B, Hazleton, PA 18201 posing at a patient to receive urgent care services.

38.    During each of the contacts, the undercover agents were seen by TAYOUN in his capacity as a medical doctor of CEDAR EMERGENCY PHYSICIANS. Following the appointments, undercover agents picked up prescriptions prescribed by TAYOUN.

39.  In each scenario, the undercover agents paid for services prior to meeting with
TAYOUN. Undercover agents observed and/or were told the forms of payment
accepted at CEDER EMERGENCY. In addition to insurance, CEDAR
EMERGENCY accepts cash, checks, and credit cards.

40.  Two of the undercover agents paid by check. Undercover agents were directed
to write the checks out to "CEDAR EMERGENCY PHYSICIANS" in lieu of
"HAZLETON URGENT CARE CENTER." HAZLETON URGENT CARE CENTER
is the name of the business posted outside of the building.

41.  One of the undercover agents paying by check observed the receptionist record
the check information on a form which appeared to track the payments made by
check. The receptionist then retrieved a pencil box container from under her
desk, placed the check into it, then placed the pencil box container under the
desk. This undercover agent was the only undercover agent to not receive a
receipt.

42.  The other two undercover agents paid for their services in cash. In one instance,
the cash was taken by a receptionist from the undercover agent then placed near
her computer. Eventually, the receptionist brought the cash to another room. In
another instance, the undercover agent provided the cash to the receptionist who
placed it in a see-through red box with cash and checks.

43.  The undercover agents who paid in cash presented their cash to the receptionist
for payment.

44.  Bank records were subpoenaed in the name of PAUL TAYOUN and CEDAR
EMERGENCY from multiple financial institutions. Two financial institutions

responded to the subpoenas with accounts in the name of PAUL TAYOUN and

CEDAR EMERGENCY. These accounts were reviewed, and it was noted there

were no significant cash deposits made into the accounts in the names of PAUL

TAYOUN or CEDAR EMERGENCY. Based on the activity of the undercover

contacts, CEDAR EMERGENCY receives cash payment for services rendered,

but evidence was not found to show cash received was deposited into the

accounts in the name of PAUL TAYOUN or CEDAR EMERGENCY.

45.    Three of the four undercover agents received receipts for their services. CEDAR

EMERGENCY PHYSICIANS is listed at the top of the receipts provided to the

undercover agents. These receipts were generated by a computer and printed

out.

46.    Other medical office employees were observed at CEDAR EMERGENCY during

the visits by the undercover agents.

47.    Based on the allegations made, as well as the activity observed by the

undercover contacts by the IRS, TAYOUN appears to be actively working at

CEDAR EMERGENCY PHYSICIANS LLC DBA HAZLETON URGENT CARE

CENTER.

48.    During their visits to CEDAR EMERGENCY PHYSICIANS, the undercover

agents entered a waiting area where there was a receptionist area. Undercover

agents observed other offices and patient rooms at the facility. More than one

computer was observed in the receptionist area and at least one additional

computer in another office within the suite. Files and documents were observed

by the undercover agents including a handwritten form for recording payments received.

## COMPUTER RECORDS

49.     As described above and in Attachment B, this application seeks permission to search for records that might be found at **101 South Church Street, Suite B, Hazleton, Pennsylvania 18201,** and **10 Hyde Park Drive, Drums, Pennsylvania 18222** in whatever form they are found. One form in which the records might be found is data stored on a computer's hard drive or other storage media. Thus, the warrant applied for would authorize the seizure and search of electronic storage media or, potentially, the copying of electronically stored information, all under Rule 41(e)(2)(B).

50.     *Probable cause.* I submit that if a computer or storage medium is found at **101 South Church Street, Suite B, Hazleton, Pennsylvania 18201,** and **10 Hyde Park Drive, Drums, Pennsylvania 18222** there is probable cause to believe those records will be stored on that computer or storage medium, for at least the following reasons:

51.     I have discussed the case with Special Agent James Flynn. Special Agent Flynn is a Computer Investigative Specialist for the Criminal Investigation Division of the Internal Revenue Service.  Special Agent Flynn has been involved with the field of computer forensics since May 2019.  He has received extensive training relating to this field at the Treasury Computer Forensic Training Program (TCFTP).  Special Agent Flynn is a Certified Forensic Computer Examiner

(CFCE) through The International Association of Computer Investigative Specialists (IACIS). Previously, he also received the A+ certification from CompTIA. In addition to being an affiant, he has also assisted numerous Agents in the preparation and execution of warrants relating to computer related issues.

52.    Special Agent Flynn has informed me that conducting a search of a computer system, documenting the search, and making evidentiary and discovery copies of data on the computer is a lengthy process. It is necessary to determine that no security devices are in place which could cause the destruction of evidence during the search; in some cases it is impossible even to conduct the search without expert technical assistance. Since computer evidence is extremely vulnerable to tampering or to destruction through error, electrical outages, and other causes, removal of the system from premises will assist in retrieving the records authorized to be seized, while avoiding accidental destruction or deliberate alteration of the records. It would be extremely difficult to secure the system on the premises during the entire period of the search. Further, even if passwords for hard drive encryption are provided, they may be incorrect thus necessitating research or contact with the manufacturer.

53.    Further, even when records are stored on floppy disks, recordable CD disks, or on a hard drive, they may still be retrievable even when they purportedly have been erased, deleted or become corrupted. Should such data retrieval be necessary, it is time-consuming and would add to the difficulty of securing the system on the premises during the search.

54.    The accompanying software must also be seized, since it would be impossible without examination to determine that it is standard, commercially available software.  In order to read the files and records, it is necessary to have access to the software used to create them.  In addition, without examination, it is impossible to determine that the diskette purporting to contain a standard commercially available software program has not been used to store records instead.  System documentation, instruction manuals, and software manuals are also necessary to properly operate the specific system in order to accurately obtain and copy the records authorized to be seized.

55.    Based on the information set forth above, if a determination is made during the search that information contained in a computer or computer system, and related computer equipment and storage devices, cannot be successfully retrieved and copied in a timely manner to depict the exact environment in which the data was created at the premises, I seek the authority to seize: (a) Computer hardware, including all electronic devices which are capable of storing, analyzing, creating, displaying, converting, or transmitting electronic or magnetic computer impulses or data.  These devices include computers, computer components, computer peripherals, word processing equipment, modems, monitors, encryption circuit boards, optical scanners, external hard drives, optical drives, and other computer-related electronic devices; (b) Computer software, including any and all instructions or programs stored in the form of electronic or magnetic media which are capable of being interpreted by a computer or related equipment.  The items to be seized include operating systems, application software, utility programs,

compilers, interpreters, and other programs or software used to communicate with computer hardware or peripherals either directly or indirectly via telephone lines, radio, or other means of transmissions; and (c) Instruction manuals, including any and all written and printed material which provides instructions or examples concerning the operation of a computer system, computer software, and/or related device.

56.   If, after inspection of any seized computer equipment, the computer analysts determine that the items are no longer necessary to retrieve and preserve the evidence data, the government will return them within a reasonable amount of time.

## PROBABLE CAUSE BASED ON EXPERIENCE

57.   Based upon my and Special Agent Burnside's training, experience, and participation in other investigations, I know:

   a)   It is common for tax records and other financial records to be maintained for long periods of time, well over several years. Individuals and entities frequently maintain financial and bank records at their homes and businesses for a number of years. Also, it is common that business and financial records are maintained electronically on computers and computer related equipment. ATM receipts, deposit slips and other documents are maintained to balance monthly account statements. Also, individuals frequently maintain receipts for utility bills, large asset purchases, and tax payments for a period of time for record keeping purposes to include proof

of payment. Therefore, it is reasonable to expect that records relating to
CEDAR EMERGENCY corporate income and TAYOUN's individual
income tax records would be physically and electronically maintained at
the business and residence.

b) Further, individuals and entities engaged in fraudulent activities frequently
retain records of their transactions within their residence, place of
business, rented storage units, vehicles, or other places under their
control. These records may be in the form of written notes and
correspondence, receipts, negotiated instruments, contracts, bank
statements, and other records. Records of this kind are also often stored
on computer media.

c) Businesses normally maintain at their place of business indicia of
occupancy, records regarding officers and employees, safe deposit box
keys and documents, papers relating to the ownership of assets and
insurance policies, financial documents, and other miscellaneous
documents, all of which are evidence necessary to calculate and
corroborate the income and expenses of the business and to establish the
extent and control of the business.

d) The Internal Revenue Code, 26 USC 6001, requires that every person
liable for any tax keep such records as are prescribed by the regulations
promulgated by the IRS. Regulation 1.6001-1-(a) requires that any person
subject to tax shall keep "such permanent books of account….as are
necessary to establish the amount of gross income, deduction, credits, or

other matters required to be shown by such person."  According to

subsection (e), those records must be retained "so long as the contents

thereof may become material in the administration of any internal revenue

law."

e) Businesses generally keep regular business records on file at the offices

or homes of the persons involved in that business for a period of months

or years, and do not immediately destroy them. It has also been my

experience that most individuals keep important personal business

records, including tax records, on hand in their homes for similar periods

of time and do not immediately destroy them.

f) Financial institutions generally require retention of records for seven

years. Individuals frequently keep financial records, for themselves and

their businesses, for a long period of time and often dating further back

than the financial institution requirements.

g) Evidence of income is frequently kept at the residence of individuals.

Items purchased and the receipts of purchases by individuals demonstrate

the existence of income.

h) Persons who engage in the operation of a personal service business entity

often utilize electronic equipment such as computers to record and store

information pertaining to sales of services to clients, purchases of expense

items, payment to employees, including wages and salaries, accounts

payable, accounts receivable, and to account for the profits or losses from

the operation of the business.  Computers are also used to record and store information regarding clients.

i)  Records available were examined to identify the residence of TAYOUN as being located at 10 Hyde Park Drive, Drums, Pennsylvania, and the business location of CEDAR EMERGENCY PHYSICIANS as 101 Church Street, Suite B, Hazleton, Pennsylvania. We are not aware of any payments for use to storage facilities or other properties owned by TAYOUN or CEDAR EMERGENCY.

j)  For all of the above reasons, there is probable cause to believe records described above, and further described in Attachment B, are to be located at the subject locations as described in Attachment A-1 and A-2.

## CONCLUSION

58.  Based on the facts set forth above, there is probable cause to believe that the business location of PAUL TAYOUN, known as CEDAR EMERGENCY PHYSICIANS LLC DBA HAZLETON URGENT CARE CENTER, located at 101 South Church Street, Suite B, Hazleton, Pennsylvania 18201, and the residence of PAUL TAYOUN located at 10 Hyde Park Drive, Drums, Pennsylvania 18222, contain evidence of Title 26 U.S.C. § 7201, Attempting to Evade or Defeat Tax; Title 26 U.S.C. § 7202, Willful Failure to Collect or Pay Over Tax; Title 26 U.S.C. § 7203, Willful Failure to File Return, Supply Information, or Pay Tax; and Title 26 U.S.C. § 7212(a), Attempts to Interfere with the Administration of Internal Revenue Laws. Accordingly, I respectfully request the issuance of search

warrants 101 South Church Street, Suite B, Hazleton, Pennsylvania 18201 and

10 Hyde Park Drive, Drums, Pennsylvania 18222.

## Attachment A-2: Location to be Searched

The Residence Location of:

PAUL TAYOUN

10 Hyde Park Drive

Drums, Pennsylvania 18222

The residence of PAUL TAYOUN is in Drums, Pennsylvania. The home is a light-colored brick with multiple windows. There is a double bay garage as part of the home. The single-family house is two stories, approximately 13,260 square feet, and sits on over three acres of land.

Residence



Satellite image of Residence



The residence is located at the end of a cul-de-sac in a rural area of Luzerne County. There is one access point to the home from the cul-de-sac. This entrance has a black gate with light-colored stone posts. The driveway is approximately 375ft long from the road to the residence.

Entrance to Driveway

